FILED IN CLERK'S OFFICE
U S D C  Atlanta

SEP 2 9 2008

JAMES N HATTEN
By  Sue Coalson

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

ILLINOIS UNION INSURANCE
COMPANY,
     Plaintiff,

v.

WILLIAM C. MEREDITH CO.,
et al.,
     Defendants.

:
:
:    CIVIL ACTION NO.
:    1:07-CV-1840-WBH
:
:
:    SUMMARY JUDGMENT
:
:    **DOCKET UNDER SEAL**
:

## ORDER

This matter is now before the Court for consideration of Plaintiff's motion to file its summary judgment under seal, [Doc. 54], Plaintiff's motion for summary judgment, [Doc. 55], Defendants' motion for summary judgment, [Doc. 60], and the various memoranda in opposition thereto and in support thereof.

## I. Background

Plaintiff Illinois Union Insurance Company brought the instant action seeking a declaration that it has no duty under two insurance policies to defend or indemnify Defendants in currently pending lawsuits brought in Fulton County Superior Court. In their answer, Defendants raised a counterclaim seeking a declaration that Plaintiff has a duty to defend and indemnify Defendants under the two policies.

The Defendants consist of the William C. Meredith Co., Inc., ("WC Meredith") Meredith Pole & Timber, Co., Inc., ("Meredith Pole"), Cleveland G. Meredith, and Paul M. Castle. According to Defendants, Meredith Pole procures wood and fashions it into utility poles without treating the wood with chemicals. WC Meredith, operating out of a facility in East Point, Georgia, purchases wooden poles and treats those poles with creosote or pentachlorophenol. Defendant Cleveland G. Meredith is the Chairman of WC Meredith. Defendant Paul M . Castle is Vice-President and General Manager of WC Meredith and Vice-President of Meredith Pole.

Owners of property near the WC Meredith facility have filed three lawsuits (the "Underlying Lawsuits") in Fulton County Superior Court claiming damages arising out of WC Meredith's alleged release of noxious chemicals into the environment. Defendants assert that the lawsuits are meritless.

Plaintiff issued two surplus lines general liability insurance policies (the "Policies") covering WC Meredith and Meredith Pole. Defendants informed Plaintiff about the lawsuits, and Plaintiff agreed to defend the suits under a reservation of rights. Plaintiff then initiated the instant action seeking a declaratory ruling that it is not liable to Defendants under the terms of the Policies. Defendants have filed a counterclaim seeking a ruling that Plaintiff is liable for coverage under the Policies.

AO 72A
(Rev 8/82)

Both sides have now filed motions asserting that each is entitled to summary judgment.

## II. **Discussion**

A. Summary Judgment Standard

Summary judgment is proper when no genuine issue as to any material fact is present, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The movant carries the initial burden and must show that there is "an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The nonmovant is then required "to go beyond the pleadings" and present competent evidence in the form of affidavits, depositions, admissions and the like, designating "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324. "The mere existence of a scintilla of evidence" supporting the nonmovant's case is insufficient to defeat a motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Resolving all doubts in favor of the

AO 72A
(Rev 8/82)

nonmoving party, the court must determine "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Id.

B. Defendants' Motion for Summary Judgment[1]

In their motion for summary judgment, [Doc. 60], Defendants argue that they are entitled to summary judgment because:

1.    Plaintiff lacks standing to bring this action under Georgia law because Plaintiff did not comply with Georgia's Surplus Line Insurance Law, see O.C.G.A. § 33-5-20 et seq., and Plaintiff has not otherwise procured a Certificate of Authority from the Georgia Secretary of State.

2.    There is no evidence of an agency relationship among Plaintiff and Westchester Fire Insurance Company.

3.    Defendants are entitled to judgment on their counterclaim.

---

[1]This Court will first consider Defendants' motion for summary judgment because it raises, *inter alia*, the issue of whether Plaintiff has standing to bring suit in this Court.

AO 72A
(Rev 8/82)

## C. Discussion of Defendants' Claims

### 1. Standing

With regard to Defendants' first claim that Plaintiff lacks standing to bring the instant action, pursuant to Georgia's Surplus Line Insurance Law, unauthorized insurance carriers (e.g., insurance carriers that are not licensed to sell insurance in Georgia) are permitted to sell surplus lines policies if the carriers follow the guidelines set forth in the Georgia Code and in regulations promulgated by the Insurance Commissioner. Most notably, surplus lines policies may be procured only through a broker specially licensed to sell such policies, and the broker must verify that the insurer meets certain financial thresholds before the policy is sold. According to Defendants, Plaintiff's insurance broker did not follow these guidelines in issuing the Policies, particularly with respect to the fact that Plaintiff's licensed broker did not procure the policy and did not ascertain Plaintiff's financial condition. Plaintiff disputes this assertion.

Pursuant to O.C.G.A. § 14-2-1502(a), "[a] foreign corporation transacting business in this state without a certificate of authority may not maintain a proceeding in any court in this state until it obtains a certificate of authority." Plaintiff apparently has no certificate of authority to transact business in Georgia. The Surplus Line Insurance Law is an exception to the certificate of authority requirement. See

5

O.C.G.A. § 33-5-30; Kay-Lex Co. v. Essex Ins. Co., 649 S.E.2d 602, 609 (Ga. Ct. App. 2007). If a foreign insurer complies with the Georgia surplus line insurance guidelines, the insurer need not obtain a certificate of authority in order to maintain a proceeding in court. Id. at 609.

A review of the evidence presented by the parties indicates that the Policies were not procured in *strict* compliance with Georgia's Surplus Lines Law. On the other hand, it also appears that the brokerage firm that procured the policies complied with the spirit of the law in that the firm employs a surplus lines broker licensed in Georgia and the financial condition of Plaintiff was verified before the policy was written.

Other than O.C.G.A. § 33-5-3, which states that a violation of the Surplus Lines Insurance Law is a misdemeanor, O.C.G.A. § 33-5-57(a), which states that an unauthorized insurer cannot file a responsive pleading "in any action or proceeding instituted against it" without first either posting a bond or procuring a certificate to sell insurance, and O.C.G.A. § 33-5-2, which states that an insurance contract effectuated by an unauthorized insurer in violation of Georgia law is voidable at the option of the insured, this Court could not unearth any statutes or case law that discussed the consequences to an unauthorized insurer who issued a policy that did not conform to the requirements of the Georgia Surplus Lines Insurance Law — at

6

least not in a manner that enlightens this Court as to the issues raised by Defendants in their motion. Specifically, no case has held that an unauthorized insurer that has not complied with the Surplus Lines Insurance Law does not have standing to bring a declaratory action. In the Kay-Lex case cited above, the Georgia Court of Appeals held that a surplus lines insurer that had complied with the Georgia Code requirements for the sale of surplus lines insurance had standing to pursue a declaratory judgment action. However, the court did not specifically hold the obverse – that a noncompliant insurer would not have standing.

As a general matter, anyone with a valid claim has standing to bring suit in Georgia's courts, and in the absence of any specific limitation on standing directed at unauthorized insurers, the only other possible limitation on Plaintiff's standing would be that found in O.C.G.A. § 14-2-1502(a), noted above, which prevents a foreign corporation that has not obtained a certificate of authority from the Georgia Secretary of State from "maintaining" a court action. Indeed, in Kay-Lex – cited as authoritative by Plaintiff – the defendant relied on § 14-2-1502(a) in arguing that the plaintiff lacked standing, and the court held the Georgia Surplus Lines Law provides an exception to § 14-2-1502(a) for insurers that comply with the law.

However, § 14-2-1502(a) does not divest foreign corporations of standing to bring suit, even where the foreign corporation has not obtained a certificate of

7

authority and is not otherwise excepted from § 14-2-1502(a)'s requirements. In Transportation Ins. Co. v. El Chico Restaurants, Inc., 524 S.E.2d 486 (Ga. 1999), El Chico Restaurants, Inc., ("El Chico") a Texas corporation, brought suit in Richmond County Superior Court without first obtaining a certificate of authority from the Georgia Secretary of State. After a removal of the case to federal court and a subsequent remand back to the state court, the state trial court dismissed the complaint pursuant to O.C.G.A. § 14-2-1502(a) because El Chico did not have a certificate of authority. The Georgia Court of Appeals reversed. El Chico Restaurants v. Transp. Ins. Co., 509 S.E.2d 681 (1998), and the Georgia Supreme Court granted certiorari "to consider whether a foreign corporation's action is not void, and thus subject to amendment, even if the corporation is not authorized to maintain an action in this State because it has not obtained a certificate of authority to transact business here pursuant to OCGA § 14-2-1502(a)." Transportation, 524 S.E.2d at 487.

After reviewing the language of § 14-2-1502(a) and its legislative history, the Georgia Supreme Court concluded that the phrase "maintain a proceeding" in the statute does not include "'commencement' of the item to be maintained." Id. Accordingly, under Georgia law, "an uncertified foreign corporation may initiate [an] action but not continue it without obtaining a certificate of authority," id. at 488, and Plaintiff thus clearly has standing to bring the instant action.

8

Finally, regarding the question of whether Plaintiff must now obtain a certificate of authority before it can continue to prosecute its action, this Court concludes, after a review of Georgia's statutory scheme, that Plaintiff is not required under O.C.G.A. § 14-2-1501 to obtain a certificate of authority because, at least for the purposes of this action, Plaintiff does not "transact business in this state" as defined in § 14-2-1501.

> Under O.C.G.A. § 14-2-1501(b)(5) ("[e]ffecting sales through independent contractors"), (6) ("[s]oliciting or procuring orders, whether by mail or through employees or agents or otherwise, where the orders require acceptance without this state before becoming binding contracts and where the contracts do not involve any local performance other than delivery and installation"), or (11) ("[e]ffecting transactions in interstate or foreign commerce") each states exclusions from the requirement of a certificate of authority under O.C.G.A. § 14-2-1502 . . . .

Imex Intern., Inc. v. Wires EL, 583 S.E.2d 117, 123-24 (Ga. Ct. App. 2003). "Where the transaction sued upon by the noncertified foreign corporation arose out of interstate or foreign commerce, an action may be pursued even where the foreign corporation would be required to obtain a certificate of authority for other transactions which occurred intrastate." Id. at 124 (citing Briarcliff Communications Group v. Associated Press, 268 S.E.2d 356 (Ga. Ct. App. 1980)). "[A]n insurance company doing business across state lines engages in interstate commerce." Humana Inc. v. Forsyth, 525 U.S. 299, 306 (1999). The instant action concerns an insurance policy

9

sold by an Illinois insurer to a Georgia company, a transaction clearly involving interstate commerce. Accordingly, Plaintiff has standing to maintain the instant action under Georgia law, and it need not obtain a certificate of authority.

### 2. Westchester Fire Insurance Company

Defendants next claim that they are entitled to summary judgment because there is no evidence of an agency relationship among Plaintiff and Westchester Fire Insurance Company ("Westchester"). According to Defendants,

> The evidence shows that Westchester and its employee, Ms. Cathy Fox, received the Defendants' claim made on the subject Policies, was responsible for handling such claim, and for rendering coverage decisions concerning same. Although this action is being prosecuted in the name of Illinois Union Insurance Company, it is abundantly clear that Westchester is really the entity prosecuting this case. At all times, Ms. Fox and others at Westchester communicated and otherwise responded to the Defendants relative to the claims made on the subject Policies. In fact, Ms. Fox was designated by the Plaintiff as its corporate representative although she is not an employee, officer or director of the Plaintiff. Ms. Fox testified that she is an authorized representative of the Plaintiff pursuant to an agreement between the Plaintiff and Westchester. However, Ms . Fox did not know when such agreement was entered into, has never read it, has never seen it and is unaware of where it currently is. Ms. Fox understood that pursuant to an agreement which she has never seen, never read and does not know where it is, that she had authority to handle claims made on certain of Plaintiff's policies. Ms. Fox believed that the Policies in this case are subject to such an agreement because otherwise her supervisor would not have set it up and assigned it to her.

[Doc. 60 at 17-18].

10

Defendants then proceed to argue that under Georgia law, no agency existed between Plaintiff and Westchester. "As a result, there is no evidence of any agency relationship by and between Plaintiff and Westchester and Defendants are therefore entitled to summary judgment." [Id. at 20-21].

However, Defendants have entirely failed to demonstrate why the apparent agency relationship, or lack thereof, between Westchester and Plaintiff matters. The instant dispute regards two insurance policies. The Policies are between Plaintiff and two of the Defendants. As such, Plaintiff and those two Defendants are in privity so as to give rise to standing to Plaintiff to bring the instant action. Even if Plaintiff designated Ms. Fox and/or Westchester to handle Defendants' claims under the Policies, this Court cannot determine how that would affect the parties' rights under the Policies. Defendants are thus not entitled to summary judgment with respect to their second claim.

### 3. Defendants' Counterclaim

In their final claim, Defendants assert that they are entitled to summary judgment on their counterclaim seeking a declaration that Plaintiff owes them a duty under the Policies. Defendants first assert that, because of the standing issue raised in Defendants' first claim, Plaintiff's answer to the counterclaim must be stricken and

11

judgment must entered in Defendants' favor. As is noted above, however, Defendants are not entitled to summary judgment on the standing issue.

Defendants' next argument relates to the undisputed fact that Meredith Pole has never used the chemicals that are the subject of the Underlying Lawsuits, and, indeed, Meredith Pole's facilities are located in South Georgia, well away from the purportedly offensive East Point facility of WC Meredith. As discussed, the Policies exclude coverage for injury or damage arising from the use or discharge of various pollutants, and, even though the Underlying Lawsuits allege injury caused by a release of noxious chemicals, Defendants assert that since Meredith Pole has never used the chemicals, the exclusions asserted by Plaintiff do not apply.

The issue of whether the pollution exclusions apply to absolve Plaintiff of liability under the Policies is discussed at length below. Here, this Court will assume that the pollution exclusions would apply to a company who polluted, and focus on the issue of whether the exclusions would apply to a company who never polluted but is nonetheless sued for polluting, and a review of Georgia case law reveals that the exclusions would apply.

According to the Georgia Court of Appeals,

> Whether an insurer is obligated to defend an action against its insured "is determined by the contract; and since the contract obligates the insurer to defend claims asserting liability under the policy; even if

12

groundless, the allegations of the complaint are looked to to determine whether a liability covered by the policy *is asserted*. Thus, the issue ... is not whether [the insured] is *actually liable* to the [plaintiffs] ...; the issue is whether a claim has been asserted which falls within the policy coverage and which [the insurer] has a duty to defend." (Punctuation omitted; emphasis in original.) St. Paul Fire, etc., Co. v. Mitchell, 164 Ga. App. 215, 216(1), 296 S.E.2d 126 (1982); compare Al Who Enterprises v. Capitol Indem. Corp., 217 Ga. App. 423, 426(1), 457 S.E.2d 696 (1995).

Penn-America Ins. Co. v. Disabled American Veterans, Inc., 481 S.E.2d 850, 851 (Ga. Ct. App. 1997) (emphasis and alterations in original).

In Penn-America, the plaintiff in the underlying suit who was the insured's employee had slipped and fallen in the insured's building. The relevant policy excluded claims brought by employees concerning events that occurred in the course of their employment. Id. However, the complaint alleged negligence and was silent as to the fact of the underlying plaintiff's employment with the insured. Id. The court concluded that where "the allegations of the complaint show it to be a personal injury action against the insureds for an injury occurring on the insureds' premises, the allegations clearly assert a claim which falls within the policy coverage and which [the insurer] was obligated to defend." Id.

As Defendants note, in Penn-America, the Georgia Supreme Court states that an insurer

13

may have an obligation to defend even when the complaint against the insured falsely indicates non-coverage .... In that rare class of cases, courts should look to whether the true facts showing coverage are known or ascertainable to the insurer. If the true facts are known or ascertainable to the insurer at the outset, then the insurer is obligated to defend the suit, just as if the complaint against the insured falsely alleged coverage.

Id. at 376 (citing Loftin v. United States Fire Ins. Co., 127 S.E.2d 53, 57 (Ga. 1962)).

Defendants assert that, according to the foregoing passage from Penn-America, Plaintiff's liability under the Policies arose upon discovering (or being informed of) the "true fact" that the Underlying Lawsuits are baseless and Meredith Pole never used chemicals in its operations. However, this Court declines to adopt this view because it is clear that Defendants' interpretation reads the Penn-America court's language out of its proper context.

As is indicated above, the Penn-America court cited to Loftin v. United States Fire Ins. Co. for the proposition that a "rare" class of actions exists for which an insurer's knowledge of "true facts" could obligate the insurer to provide a defense. The cited language in Loftin is as follows:

Much rarer than actions involving 'groundless' suits are the cases in which the insured seeks recovery for the expenses of defending a suit on the ground that the known or ascertainable facts giving rise to a claim were covered by the policy, but the complaint against the insured alleged untrue facts showing non-coverage. In this class of cases, when the insurance contract contains a provision like the one now in issue, the insurer must defend for the reasons hereinafter stated.

Loftin, 127 S.E.2d at 57.

AO 72A
(Rev 8/82)

Clearly the Loftin and Penn-America courts, in discussing cases where the true facts might create an obligation for an insurer to defend, were referring to cases where the complaint alleges noncoverage but the known or ascertainable facts are within coverage. An example might be a car accident where an underlying lawsuit identifies the wrong (uninsured) car, but the insurance company knows that a car it covers under a policy was the car involved; in which case, under Penn-America and Loftin, the insurance company would have to defend the suit.

Defendants propose adding yet another class of cases whereby insurance companies are required to provide a defense in all frivolous and/or meritless suits regardless of subject matter. However, this Court can locate no case law in support of this proposition and declines to adopt such a rule because a scheme requiring insurers to evaluate, early in a case, whether a particular complaint has merit would be entirely unworkable.

Further relevant to the issue here presented, the Georgia Supreme Court in Great American Ins. Co. v. McKemie, 259 S.E.2d 39 (Ga. 1979), upheld an insurer's refusal to defend a suit under a liability policy requiring the insurer to "'defend any suit against the insured seeking damages on account of such bodily injury or property damage.'" Id. at 40. The underlying complaint raised issues related to the insured's failure to provide an "adequate and lawful dwelling" but did not assert bodily injury

15

or property damage. Id. As the complaint did not raise a claim related to matters covered by the insurance policy, the court concluded that no duty to defend arose under the policy. Id. Under Georgia law, the allegations of the complaint dictate whether a liability covered by the policy is asserted. Id. at 40-41; see generally Storch v. Cambridge Mut. Fire Ins. Co., 497 S.E.2d 606 (Ga. Ct. App. 1998); Aetna Cas., etc., Co. v. Empire Fire, etc., Ins. Co., 442 S.E.2d 778 (Ga. Ct. App. 1994); Cantrell v. Allstate Ins. Co., 415 S.E.2d 711 (Ga. Ct. App. 1992).

Accordingly, to the degree that the pollution exclusion in the Policies applies to exclude coverage for the release of creosote or pentachlorophenol as alleged in the underlying complaints, that exclusion would relieve Plaintiff of a duty to defend Meredith Pole even where it is undisputed that Meredith Pole never used creosote or pentachlorophenol in its operations and that it has never operated out of the East Point, Georgia, facility.

D. Plaintiff's Motion for Summary Judgment

In Plaintiff's motion for summary judgment, [Doc. 55], Plaintiff asserts that (1) the exclusions in the policy apply to bar coverage for the allegations raised in the Underlying Lawsuits, (2) Defendants knew of the claims prior to the effective dates

of the policies, and (3) Defendants failed to comply with the notice provisions of the Policies.

While this Court is not convinced that Plaintiff has effectively demonstrated that Defendants had prior knowledge of the loss or that Defendants were too slow in providing notice to Plaintiff regarding the underlying claims, this Court will reserve its ruling on those claims because it is clear that pollution exclusion in the Policies relieves Plaintiff of an obligation to defend the Underlying Lawsuits and to provide coverage for whatever loss Defendants suffer in those suits.

### 1. Pollution Exclusion

In the "Commercial General Liability Coverage Form" (the "Liability Form") of the Policies,[2] Plaintiff agrees to

> pay those sums that the Insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. [Plaintiff] will have the right and duty to defend the Insured against any "suit" seeking those damages. However, [Plaintiff] will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. [Plaintiff] may, at [its] discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

---

[2] The Policies apparently contain identical (or materially identical) language.

17

[Doc. 1, Exh. B. Liability Form at 1]. Under Section I, Paragraph 2 of the Liability Form, Plaintiff sets forth the following exclusion:

> 2. Exclusions
>
> > This Insurance does not apply to:
> >
> > . . . .
> >
> > f. Pollution
> >
> > > (1)    "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" . . . [a]t or from any premises, site or location which is or was at any time owned or occupied by . . . any insured.

[Id. at 3]. Pollutants are defined as "any solid, liquid, gaseous or thermal irritant or contaminant, including, vapor, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed." [Id. at 14].

> Under Georgia law, insurance companies are generally free to set the terms of their policies as they see fit so long as they do not violate the law or judicially cognizable public policy. Thus, a carrier may agree to insure against certain risks while declining to insure against others. In construing an insurance policy, we begin, as with any contract, with the text of the contract itself.

Reed v. Auto-Owners Ins. Co., --- S.E.2d ----, 2008 WL 4286606, 1 (Ga. Sept. 22, 2008) (footnotes omitted).

18

"An exclusion sought to be invoked by the insurer will be liberally construed in favor of the insured and strictly construed against the insurer when it is not clear and unequivocal . . . ." Kerr-McGee Corp. v. Georgia Cas. & Sur. Co., 568 S.E.2d 484, 486 (Ga. Ct. App. 2002); Claussen v. Aetna Casualty & Surety Co., 380 S.E.2d 686 (Ga. 1989) (exclusions in insurance policies "construed against the insurance company and in favor of the insured"); see also, Sawhorse, Inc. v. Southern Guaranty Ins. Co. of Ga., 604 S.E.2d 541, 543-44 (Ga. Ct. App. 2004) ("[C]ontracts are construed against the insurer if the provisions are susceptible to more than one interpretation."). However, where the terms of the policy are plain and unambiguous, it must be enforced as written. Ryan v. State Farm Mut. Auto. Ins. Co., 413 S.E.2d 705 (1992).

In opposing Plaintiff's assertion that the pollution exclusion applies to absolve Plaintiff of liability under the Policies, Defendants argue that the allegations in the underlying complaint are entirely false and assert that "Plaintiff cannot ignore the true facts and blindly rely upon false allegations to shirk its coverage responsibilities." [Doc. 70 at 10]. Defendants also reargue their position, discussed above, that because Meredith Pole has not used chemicals and does not operate out of the East Point, Georgia, facilities, Plaintiff is obligated to defend the claims against Meredith Pole.

AO 72A
(Rev 8/82)

Finally, Defendants argue that the pollution exclusion is unenforceable under Georgia law because it is overbroad or ambiguous.

This Court's conclusion, discussed above in regard to Defendants' third claim in their summary judgment motion also applies to Defendants' first and second arguments in opposition to Plaintiff's motion. The issue is not whether the insured is actually liable to the plaintiffs in the underlying lawsuits but whether the claims asserted in those lawsuits fall within the policy coverage such that the insurer has a duty to defend. Penn-America, 481 S.E.2d at 851. If the pollution exclusion is effective to put the underlying plaintiffs' claims outside the coverage of the Policies, it does not matter that the underlying claims are entirely frivolous or without merit.

Having reviewed Georgia law on the issue, this Court further concludes that the pollution exclusion unambiguously relieves Plaintiff of its obligation to defend the Underlying Lawsuits or indemnify Defendants for any loss suffered therein. Many commercial general liability policies include language that excludes coverage of claims for injury or damages arising from exposure to pollution and/or hazardous chemicals. Virginia Properties, Inc. v. Home Ins. Co., 74 F.3d 1131, 1132 (11th Cir. 1996). In Georgia, such clauses are given effect when they are unambiguous.

In the recent case of Reed v. Auto-Owners Ins. Co., --- S.E.2d ----, 2008 WL 4286606 (Ga. Sept. 22, 2008), the Georgia Supreme Court analyzed a pollution

20

exclusion clause in a commercial general liability policy that is identical to the clause that appears in the Policies. In Reed, the insured was a landlord who had been sued by a tenant alleging she had been poisoned by carbon monoxide gas due to a faulty condition in the tenant's apartment. The court seemingly took the unambiguousness of the clause for granted and noted that the sole question at issue was whether carbon monoxide gas was a "pollutant" as defined in the policy. Id. at 2. The court held that carbon monoxide is a pollutant and concluded that the Georgia Court of Appeals had not erred in reversing the trial court's denial of the insurer's summary judgment motion. Id.

The identical language was also analyzed in Kerr-McGee Corp. v. Georgia Cas. & Sur. Co., 568 S.E.2d 484 (Ga. Ct. App. 2002). As Defendants point out, in Kerr-McGee the Georgia Court of Appeals held that the pollution exclusion language was ambiguous and did not apply to a chemical spill, caused by the insured's subcontractor, wholly within the insured's plant, that injured a another subcontractor working in that plant. However, this Court is not convinced that Kerr-McGee retains any precedential value after Auto Owners. See Auto-Owners Ins. Co. v. Reed, 649 S.E.2d 843, 845 n.1 (Ga. Ct. App. 2007) ("[T]o the extent that [Kerr-McGee] is contrary to the above-cited cases, that opinion cannot stand as authority because it is a one-judge opinion with two judges joining in the judgment only and therefore has

21

no precedential value."). Moreover, the Kerr-McGee holding regarding the exclusion was limited to that case's facts: "Where the insured did not cause or contribute to the release, the release did not occur on or originate from the insured's property, and the indemnification claim against the insured is not for environmental contamination, the exclusion does not apply." Kerr-McGee, 568 S.E.2d at 488. The court further stated that the exclusion does apply "when pollutants escape outside the containment area of the chemical plant into atmosphere, soil, or water," id. at 487, indicating that, even under Kerr-McGee, the exclusion would apply to a claim that Defendants released pollutants into the atmosphere.

In its own analysis of the language of the pollution exclusion, this Court also finds that it is unambiguous when considering the claims asserted in the Underlying Lawsuits. The plaintiffs in the Underlying Lawsuits raise various claims that all arise from their allegation that chemical fumes in the atmosphere released by Defendants have negatively affected their lives and property. The chemicals, pentachlorophenol and creosote, have been identified as hazardous substances, see 40 C.F.R. §§ 261.33, 302.4, and there is no question but that the chemicals would fit within the fairly broad definition of pollutants in the Policies: ""any solid, liquid, gaseous or thermal irritant or contaminant, including, vapor, fumes, acids, alkalis, chemicals and waste." Accordingly, this Court concludes that the pollution exclusion applies to the claims

22

raised in the Underlying Lawsuits, and Plaintiff is not obligated under the Policies to defend those suits or otherwise indemnify Defendants regarding the claims asserted in the Underlying Lawsuits. Plaintiff is thus entitled to summary judgment on this claim.

### 2. Plaintiff's Other Grounds for Summary Judgment

Briefly, in order to complete the record, this Court finds that, with respect to the Underlying Lawsuits, the "Nuclear, Chemical, and Biological Exclusion" is ambiguous both under its own terms and because of the existence of the Pollution Exclusion. In other words, a reasonable insured reading the Policies would not think that the exclusion applies to the claims raised in the Underlying Lawsuits. This Court further finds that property damage and personal injury were adequately asserted in the underlying complaints such that, in the absence of the Pollution Exclusion, Plaintiff would have an obligation under the Policies to defend the suit and indemnify Defendants.

### 3. Whether Plaintiff is Entitled to Recoupment of Defense Costs

Plaintiff agreed to defend the Underlying Lawsuits under a reservation of rights. In light of the fact that Plaintiff has no obligation to defend the suits, it now seeks

23

recoupment of the costs that it has incurred in defending those suits. Defendants assert that Plaintiff is not entitled to recoupment. However, neither party has made its case regarding recoupment.

A brief search indicates that there are no Georgia cases that address this question, and certainly, neither party has cited one. In other states there appear to be differing views on the matter. See Westchester Fire Ins. Co. v. Wallerich, 527 F. Supp. 2d 896 (D. Minn. 2007) (identifying majority rule favoring recoupment and minority rule where insurer can recover costs only pursuant to an express provision to that effect in place in the insurance contract).

If Plaintiff is entitled to recoupment, there must be some legal basis therefor, and the cases cited by Plaintiff indicate that an entitlement to recoupment may, for example, arise from an agreement, entered by the parties at the time that the insurer agrees to defend the action under a reservation of rights, that the insurer is entitled to recoupment if a court determines that the insurer had no duty to defend the action. E.g., Buss v. Superior Court, 939 P.2d 766, 770 (Cal. 1997). An entitlement to recoupment may also arise if the insurer's reservation of rights expressly states that it will seek recoupment, and the evidence demonstrates an express or implied acceptance of those terms. E.g., Jim Black & Associates, Inc. v. Transcontinental Ins. Co., 932 So.2d 516, 518 (Fla. App. 2006).

24

AO 72A
(Rev 8/82)

From the record, it appears that Plaintiff's reservation of rights included the following language:

> [Plaintiff] agrees to participate in the defense of the Meredith Defendants under a full reservation of rights including but not limited to the grounds set out in this letter. [Plaintiff] reserves the right to withdraw from the defense, to seek recoupment of any expenses incurred in the defense, to seek a declaration of its rights and its obligations, if any, and to decline any obligation to indemnify or defend."

[Doc. 55, Exh. 10]. However, there is no indication whether Defendants expressly or impliedly accepted those terms, neither party has discussed the question of whether the Policies address the issue, and there is nothing in the record about other possible agreements that the parties may have entered.

This Court thus finds that neither party has provided sufficient information or argument regarding possible recoupment, and this Court will deny Plaintiff's request for recoupment without prejudice to further briefing on the matter.


## Conclusion

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff's motion to file its summary judgment under seal, [Doc. 54], is **GRANTED**.

25

AO 72A
(Rev 8/82)

**IT IS FURTHER ORDERED** that Defendants' motion for summary judgment, [Doc. 60], is **DENIED** as to all claims raised therein.

**IT IS FURTHER ORDERED** that Plaintiff's motion for summary judgment, [Doc. 55], is **GRANTED** upon this Court's conclusion that the pollution exclusion in the Policies relieves Plaintiff of any duty or obligation to defend the Underlying Lawsuits or indemnify Defendants for any loss suffered therein. All other claims raised in Plaintiff's motion are **DENIED**, but the denial of Plaintiff's request for recoupment is without prejudice. Should Plaintiff wish to renew its request for recoupment, it is **DIRECTED** to do so by motion within twenty days of the date of this Order, in the absence of which this Court's denial of the request shall be with prejudice. Defendants will be allotted an ten days to respond to the Plaintiff's motion. Plaintiff is **DIRECTED** to prepare a proposed final judgment for this Court's signature.

Finally, this Order is **FILED UNDER TEMPORARY SEAL**. The Clerk is **DIRECTED** to unseal the Order in five days, unless either party files a motion seeking an order to maintain this Order under seal.

**IT IS SO ORDERED**, this _29_ day of _September_, 2008.

_WILLIS B. HUNT, JR._
WILLIS B. HUNT, JR.
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev 8/82)